UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                    **Criminal No.** 17-512 (FAB)

KEVIN CARTAGENA-ALBALADEJO,

    **Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is the United States' motion to quash the subpoena that defendant Kevin Cartagena-Albaladejo ("Cartagena") issued to Héctor López ("López"), Commissioner for the Special Investigation Bureau of the Puerto Rico Department of Justice. (Docket No. 50.) For the reasons set forth below, the Court **GRANTS** the United States' motion, and **QUASHES** the subpoena. Id.

## I.    BACKGROUND

Cartagena stands charged of possessing a machine gun in violation of 18 U.S.C. section 922(o). (Docket No. 11.) Arnaldo Fernández-Caraballo ("Fernández"), a task force agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, conducted an investigation regarding Cartagena's purported possession of a machine gun on August 20, 2017. (Docket No. 1.) The following narrative is premised on Fernández's affidavit in support of the criminal complaint. (Docket No. 1, Ex. 1.) The Court sets forth

this narrative for the sole purpose of placing the pending motion to quash in its proper context, and makes no factual findings at this juncture.

On August 20, 2017, Puerto Rico Police Department ("PRPD") agents from the Vega Baja Stolen Vehicles Unit refueled their patrol car at a Total Gas Station located in Toa Baja, Puerto Rico. Id. at p. 1. The PRPD agents observed a white Kia Soul vehicle at a nearby carwash. Id. Based on their experience, the PRPD agents inferred that the Kia Soul displayed a fake license plate. Id. The PRPD agents approached Cartagena and another individual, both of whom were seated at the carwash waiting area. Id. at p. 2. After identifying themselves as police officers, PRPD agents asked Cartagena whether the Kia Soul belonged to him. Id. Cartagena said no. Id.

As PRPD agents questioned carwash employees about the Kia Soul, Cartagena ran from the location. Id. Cartagena disregarded the PRPD agents's order to stop until he fell along a ditch. Id. Subsequently, Cartagena brandished a firearm and fired at the PRPD agents. Id. The PRPD agents fired back at Cartagena, as Cartagena continued to flee on foot while firing at PRPD agents. Id.

Cartagena ultimately surrendered after sustaining a gunshot wound. Id. PRPD agents arrested Cartagena, and recovered from his person a Glock pistol containing a 30-round high-capacity

magazine loaded with five rounds of ammunition.  Id.  Attached to the firearm was a device enabling it to fire in the fully automatic mode.  Id. at p. 3.  PRPD agents also seized a 15-round capacity magazine loaded with 15 rounds of ammunition from Cartagena's immediate area, as well as a cell phone, a car key, and $2,090 United States dollars.  Id. at pp. 2-3.

After further investigation, PRPD agents learned that the Kia Soul was previously reported stolen.  Id.  The license plate that prompted the intervention was indeed fake.  Id. at p. 3.  The car keys seized from Cartagena opened the Kia Soul, where PRPD agents recovered a Massachusetts driver's license bearing the name of an individual named Kevin Cartagena.  Id.

Cartagena entered a plea of not guilty before Magistrate Judge F. Keith Ball in the Southern District of Mississippi on October 25, 2017.[1]  (Docket No. 21.)  The Court scheduled a status conference for March 8, 2018.  (Docket No. 39.)  Subsequently, Cartagena issued a subpoena to López.  (Docket No. 50, Ex. 1.) The subpoena required López to appear before this Court on March 8,

---

[1] The passage of Hurricane María resulted in the loss of electrical power, destroyed communication towers, and caused a lack of food, fuel, and water throughout Puerto Rico.  Consequently, inmates housed at the Metropolitan Detention Center in Guaynabo, Puerto Rico were relocated temporarily to the Southern District of Mississippi pursuant to the Federal Judiciary Emergency Special Sessions Act of 2005, Pub. L. No 109-63, 119 Stat. 1993 (2005).  See Notice from the Clerk No. 17-12, Transfer of Federal Detainees Outside of District of Puerto Rico and Suspension of Criminal and Civil Trials Until November 6, 2017.

2018, the day of the status conference.  Id.  Moreover, the

subpoena commanded López to:

> [p]rovide exact copy of the reports, photos or notes
> regarding a shooting incident on August 20, 2017, at
> Sabana Seca Total Gas Station in Toa Baja, PR.  This
> incident was investigated by Special Agent Ema Cruz
> #0821.

Id.  The documents were brought to Court on the day of the

Conference and delivered to the Court.  In moving to quash, the

United States asserts that Cartagena issued the subpoena in

contravention of Federal Rule of Criminal Procedure 17 ("Rule 17").

The Court agrees.

## II.  FEDERAL RULE OF CRIMINAL PROCEDURE 17

Rule 17 governs the issuance of subpoenas in criminal cases.

See United States v. Guzmán-de los Santos, 944 F. Supp. 2d 126

(D.P.R. 2013) (Besosa, J.) (granting motion to quash subpoena

pursuant to Rule 17).  In pertinent part, Rule 17 provides as

follows:

> A subpoena may order the witness to produce any books,
> papers, documents, data, or other objects the subpoena
> designates.  The court may direct the witness to produce
> the designated items in court before trial or before
> they are to be offered in evidence.  When the items
> arrive, the court may permit the parties and their
> attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(2).  Quashal is appropriate when "compliance

would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(3).

Trial courts have wide discretion in adjudicating motions to quash.

Bowman Dairy Co. v. United States, 341 U.S. at 220 ("The court may control the use of Rule 17(c) [. . .] by its power to rule on motions to quash or modify"); United States v. Nivia, 887 F.2d 1110, 1117-8 (1st Cir. 1989) ("Given the case-specific nature of criminal trials, the district court must be afforded great latitude in weighing factors such as timeliness, materiality, relevancy, competency, practicality, and utility, as a means of determining whether a subpoena request is well founded").

Rule 17(c) is an instrument intended exclusively for trial or a formal hearing. See United States v. Louis, No. 04-203, 2005 U.S. Dist. LEXIS 1087, at *8 (S.D.N.Y. Jan. 27, 2005) (purpose of 17(c) subpoena is "trial-focused" and may be used "only to obtain materials admissible as evidence at trial"); United States v. Montañez-Ortiz, 290 F.R.D. 33 (D.P.R. 2013) (holding that subpoena directing Police of Puerto Rico to produce documents in court violated Rule 17 because "there was no trial or adversarial hearing scheduled in this case for that date and time").[2]  Put simply, the

---

[2] Cartagena attempts to distinguish the facts of Montañez-Ortiz from those of this case, emphasizing that Montañez-Ortiz concerned Rule 17(a), which governs the issuance of subpoenas to testify, and not Rule 17(c), which governs subpoenas requiring the production of documents.  Docket No. 52 at p 9. (citing Montañez-Ortiz, 290 F.R.D. 22 (D.P.R. 2013)).  The Court is not persuaded.  The subpoena at issue in Montañez-Ortiz not only sought to compel testimony, but also the production of documents from the Police of Puerto Rico.  Montañez-Ortiz, 290 F.R.D. at 33.  The Montañez-Ortiz court went so far as to attach a model subpoena duces tecum to the opinion and order, holding that "**both** Rule 17(a) and 17(c)(1) subpoenas have a specific use and purpose and they cannot be used indistinctively".  Id. (emphasis added).  The Court is satisfied that Montañez-Ortiz is applicable in the Rule 17(c) context.

purpose of a subpoena is to compel testimony or other admissible evidence at an adversarial hearing. See United States v. Santiago-Lugo, 904 F. Supp. 43 (D.P.R. 1995) (Fusté, J.) ("The rule is crystal clear about the fact that the production of documents allowed by paragraph (c) of the rule is intimately related to the attendance of the witness at a particular time and place to a formal proceedings before the court [*i.e.*] a trial, a hearing, a preliminary hearing, a grand jury proceeding").

Courts invariably define Rule 17 in the negative: subpoenas are not discovery devices or investigatory tools. See, e.g., United States v. Caro, 597 F.3d 608, 620 (4th Cir. 2010) ("We have emphasized that Rule 17(c) is not a discovery device") (internal citation omitted). In United States v. Nixon, the Supreme Court stated explicitly that one of the "fundamental characteristics of the subpoena *duces tecum* in criminal cases" is that "it was not intended to provide a means of discovery." 418 U.S. 683, 698 (1974); see also Bowman Diary Co. v. United States, 341 U.S. 214, 221 (1951) (invalidating a Rule 17(c) subpoena because it was "not intended to produce evidentiary material but [was] merely a fishing expedition to see what may turn up"); 2 Wright, Federal Practice and Procedure: Criminal § 274 at 153 and n. 16 (1982) ("It has always been clear that Rule 17(c) was not intended as a discovery device").

The proponent of a subpoena must demonstrate "(1) relevancy; (2) admissibility; [and] (3) specificity" of the requested materials. Nixon, 418 U.S. 683, 699-700 (1974); see also Stern v. United States, 214 F.3d 4, 17 (1st Cir. 2000) (holding that materials requested with a subpoena *duces tecum* must be relevant, admissible and specific). As to relevancy, there must be a "sufficient likelihood" that the subpoenaed records are "relevant to the offenses charged in the indictment." Nixon. 418 U.S. at 699-700 (internal citation omitted). There must also be a "sufficient preliminary showing" that the subpoenaed material "contains evidence admissible with respect to the offenses charged in the indictment." Id. at 701. Moreover, the party seeking the subpoenaed documents shoulders the burden of "show[ing] the evidentiary nature of the requested material with appropriate specificity." United States v. Shinderman, 232 F.R.D. 147, 149 (D. Me. 2005).

Counsel may obtain subpoenas from this Court's website. See https://www.prd.uscourts.gov/court_forms (last visited March 15, 2018). Cartagena issued the A-O Subpoena to Testify at a Hearing or Trial in a Criminal Case form. (Docket No. 50, Ex. 1.) In addition to compelling López to testify, Cartagena's subpoena instructed López to provide materials relating to the August 20, 2017 Total Gas Station shooting in Toa Baja, Puerto Rico. Id.

The applicable form, however, is the AO-89B Subpoena to Produce

Documents, Information, or Objects in a Criminal Case.   See

http://www.uscourts.gov/forms/criminal-forms/subpoena-produce-

documents-information-or-objects-criminal-case    (last   visited

March 5, 2018).   The AO-89B Subpoena refers explicitly to

Rule 17(c), providing that:

> Before requesting and serving a subpoena pursuant to
> Fed. R. Crim. P. 17(c), the party seeking the subpoena
> is advised to consult the rules of practice of the court
> in which the criminal proceeding is pending to determine
> whether any local rules or orders establish requirements
> in connection with the issuance of such a subpoena.  If
> no local rules or orders govern practice under Rule
> 17(c), counsel should ask the assigned judge whether the
> court regulates practice under Rule 17(c) to 1) require
> prior judicial approval for the issuance of the
> subpoena, either on notice or ex parte; 2) specify where
> the documents must be returned (e.g., to the court clerk,
> the chambers of the assigned judge, or counsel's
> office); and 3) require that counsel who receives
> produced documents provide them to opposing counsel
> absent a disclosure obligation under Fed. R. Crim.
> P. 16.

Id.  The Court implores defense counsel and the United States to

heed this guidance.

Although other jurisdictions require court approval for the

issuance of Rule 17(c) subpoenas.  This Court's local rules contain

no such provision.   See United States District Court for the

Northern District of California, Local Rule 17-2 ("No subpoena in

a criminal case may require the production of [documents] in

advance of the trial, hearing or proceeding at which these items

are to be offered in evidence, unless the Court has entered an

order pursuant to Rule 17(c)"); see Santiago-Lugo, 904 F. Supp. at

46 ("only with court intervention can the subpoena be utilized for

production before the court at any time prior to the trial or prior

the time when the documents are to be offered in evidence").[3]  The

most prudent course is to file a motion requesting the Court's

authorization before issuing subpoenas *duces tecum*.  To place the

Court in the best possible position to rule, the motion should

specify the documents sought to be compelled, explain why the

documents are relevant, and finally set forth the theory upon which

the documents would be admissible.'

## III. DISCUSSION

    The subpoena issued to López conflicts with Rule 17 for the

following reasons:  (1) Cartagena issued the subpoena for evidence

in the absence of a trial or formal proceeding, (2) the subpoena

lacks the requisite specificity, and (3) the subpoena made no

showing that the subpoenaed evidence is admissible.   Before

---

[3] While Rule 17(c) states that the "court **may** direct the witness to reduce the
designated time," commentators and district courts recognize that acquiring
judicial, pre-issuance authorization for subpoenas *duces tecum* "is an orderly
and desirable procedure and one frequently followed." Fed. R. Crim. P. 17(c)(2)
(emphasis added); see 2 Wright, Federal Practice and Procedure: Criminal 2d §
274 at 154; United States v. Finn, 919 F. Supp. 1305, 1329 (D. Minn. 1995);
United States v. Jenkins, 895 F. Supp. at 1395-96; United States v. Ashley, 162
F.R.D. 265, 266 (E.D.N.Y. 1995); United States v. Urlacher, 136 F.R.D. 550,
554-55 (W.D.N.Y. 1991).

addressing the merits of the motion to quash, the Court explains why the United States has standing to challenge the subpoena.

**A.   Standing**

This Court is obligated to ensure compliance with Rule 17.   See United States v. Nix, 251 F. Supp. 3d 555, 562 (W.D.N.Y. 2017) (discussing government's basis for standing and noting that, regardless of standing, the court has a duty to review subpoenas); United States v. Weissman, No. 01-259, 2002 U.S. Dist. LEXIS 24642 (S.D.N.Y. Dec. 26. 2002) ("Although the Defendant asserts that the Government lacks standing to move to quash, the Court will nonetheless address the Government's objections because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements for Rule 17(c)").

Some courts have dismissed the requirement of standing in the context of Rule 17, relying on the necessity of judicial oversight for criminal subpoenas.   See United States v. Modi, No. 01-050, 2002 U.S. Dist. LEXIS 1965 (W.D. Va. Feb. 4, 2002) (observing that "standing is a red herring in this case because the court has an interest in preserving the proper procedure prosecuted by the Rules of Criminal Procedure, irrespective of the desires of the parties") (internal quotation marks and citation omitted).   The Court need not adopt this position for purposes of

ruling on the pending motion to quash because the record makes
clear that the United States has standing to challenge the subpoena
issued to López.

As a third party, the United States "has standing to
quash a subpoena if it infringes on [its] legitimate interests."
United States v. Segal, 276 F. Supp. 2d 896, 899 (N.D. Ill. 2003)
(citing United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)
(holding that the United States possessed a legitimate interest in
quashing a defense subpoena issued to government witnesses because
"preventing undue lengthening of the trial, undue harassment of
its witnesses, and prejudicial over-emphasis on [the witness's]
credibility")).   The Court finds that the United States has
standing because the subpoena issued to López may result in
"harassment of potential witnesses, as well as undue lengthening
of the trial and discovery process" with evidence that may neither
be relevant nor admissible.   United States v. Ali, No. 05-325,
2007 U.S. Dist. LEXIS 30786 (D. Or. Apr. 24, 2007) (holding that
the United States had standing in moving to quash defendant's
subpoena issued to potential witnesses); United States v. Giampa,
No. 92-437, 1992 U.S. Dist. LEXIS 15214 (S.D.N.Y Oct. 7, 1992)
(holding government had standing to move to quash Rule 17(c)
subpoenas to non-party witness based on the government's "interest
in preventing any undue lengthening of the trial, any undue

harassment of [the witness] and his family, and any prejudicial over-emphasis on [the witness's] credibility").

Indeed, quashing a subpoena issued to a third-party on the United States' motion pursuant to Rule 17 is not unprecedented. See e.g. United States v Hardy, 224 F.3d 752 (8th Cir. 2000) (holding that district court "did not abuse its discretion in quashing subpoena" for internal police communications on motion by the United States); United States v. Robinson, No. 16-545, 2017 U.S. Dist. LEXIS 55199 (E.D.N.Y. Apr. 10, 2017) (granting the United States's motion to quash defendant's Rule 17 subpoenas issued to the Nassau County Police Department and the Suffolk County Police Department).[4]

The Court is satisfied that the United States has standing to move to quash Cartagena's subpoena. Consequently, the Court will address the merits of the United States' motion to quash.

### B. The Status Conference Identified in the Subpoena is Not a Trial or Adversarial Proceeding

A subpoena *duces tecum* is tied inextricably to a trial or adversarial proceeding. In fact, the primary purpose of Rule 17 is to "expedite the trial by providing a time and a place before

---

[4] See also United States v. Starks, No. 09-352, 2010 U.S. Dist. LEXIS 124632 (D. Mass. Nov. 23, 2010) (denying United States's motion to quash defendant's subpoena issued to the Massachusetts State Police because the request for records complied with Rule 17).

trial for the inspection of the subpoenaed materials." Bowman
Dairy Co., 341 U.S. at 220. Rule 17 subpoenas are issued "only
for the purpose of compelling the attendance of witness or the
production of evidence at formal proceeding, such as grand jury
proceedings, preliminary hearings, and trials." United States v.
La Fuente, 991 F.2d 1406, 1411 (8th Cir. 1993).[5]

The status conference serving as the underlying court
proceeding for the contested subpoena falls beyond the scope of
Rule 17(c). Pursuant to Federal Rule of Criminal Procedure 17.1
("Rule 17.1"), this Court may "hold one or more pretrial
conferences to promote a fair an expeditious trial." Fed. R. Crim.
P. 17.1. The Court ordered the parties to appear for a status
conference on March 8, 2018, at which point the Court and the
parties would discuss defendant's psychological evaluation and the
progression of this case. (Docket No. 39.) This status conference
constituted a Rule 17.1 pretrial conference, not a trial or formal
proceeding in which the parties would proffer evidence.[6] Indeed,

---

[5] Cartagena emphasizes that United States v. La Fuente was concerned with the
improper issuance of Rule 17 subpoenas to compel prospective witnesses to attend
pretrial interviews, not a status conference. Docket No. 52 at p. 9 (citing La
Fuente, 991 F.2d 1406). The fundamental proposition that Rule 17(c) subpoenas
are proper only to compel production of evidence at trial or a formal proceeding
survives this factual distinction. Neither a pretrial witness interview nor a
status conference qualifies as a trial or formal proceeding within the meaning
of Rule 17.

Rule 17 identifies the subject of the subpoena as a "witness," an individual who "sees, knows, or vouches for something," and "who gives testimony under oath or affirmation." <u>See</u> Black's Law Dictionary 661 (9th ed. 2009). The subpoena issued for López requested that he serve as a witness, not a mere messenger of documents within the chain of custody. Compelling the delivery of documents at a status conference is inconsistent with Rule 17, a "mechanism to prevent delays at trial which typically had occurred when documents were produced in response to a subpoena *duces tecum* requiring production at trial." <u>United States v. Beckford</u>, 964 F. Supp. 1010, 1021 (E.D. Va. 1997). At this point, when plea negotiations are ongoing and no trial or formal hearing is scheduled, issuance of a Rule 17(c) subpoenas is improper, as it

---

[6] Pretrial conferences are held to "promote a fair and expeditious trial," providing the Court and litigants an opportunity to discuss, *inter alia*:

> "[s]tipulations as to facts about which there can be no doubt, [e[stablishing a discovery timetable and ruling on various discovery requests; [s]etting the dates for the filing and litigation of various pretrial motions; [d]esignating a nominal "lead counsel" for multi-defendant complex cases, to coordinate the filing of defense motions; [m]arking for identification various documents and other exhibits of the parties; [and w]aivers of foundation as to such documents."

25-617.1 <u>Moore's Federal Practice, Criminal Procedure</u>, § 617.1.03 (2018). Pretrial conferences are not adversarial in nature. <u>See</u> <u>United States v. Heard</u>, No. 12-40, 2013 U.S. Dist. LEXIS 97184 (M.D. Ga. July 12, 2013) (denying United States's request requiring pretrial authentication of exhibits because doing so "would frustrate Federal Rule of Criminal Procedure 17.1, which provides an avenue for parties to *agree* to issues, such as the use of evidence, during trial").

is apparent that Cartagena's has attempted to use the subpoena power of the Court as an investigative tool.

**C.    The Subpoena Issued by Cartagena Lacks Specificity**

The subpoena issued to López is more akin to an expansive, civil discovery request than a proper Rule 17(c) subpoena *duces tecum*. Requests for entire files suggest that the subpoena is an "impermissible fishing expedition." <u>United States v. Morris</u>, 287 F.3d 985, 991 (10th Cir. 2002) (quashing a subpoena for lack a specificity when defendant requested "all records, documents, reports, telephone logs, *etc.*, surrounding the investigation into the FBI undercover agent's shooting of Mr. Morris and the agent's entire personnel file"); <u>United States v. Moore</u>, No. 92- 200, 1992 WL 266938, at *1-2 (E.D.N.Y. Sept. 29, 1992) (quashing subpoena because it was "not sufficiently specific" where movant requested "all documents memoranda, notes,

reports and other materials generated by investigators under Investigation No. 161/91 initiated on the complaint of [movant]").[7]

The subpoena issued by Cartagena compels the indiscriminate production of "reports, photos or notes regarding a shooting incident on August 20, 2017" at the Toa Baja Total Gas Station. (Docket No. 50, Ex. 1.) This expansive language suggests that Cartagena has embarked on a fishing expedition, rather than seek to compel the production of relevant and admissible evidence. Cartagena's response to the United States's motion to quash reinforces the Court's characterization of the subpoena.

According to Cartagena, "criminal defense attorneys have an ethical obligation to investigate cases." (Docket No. 52 at p. 3.) This is true. A duty to investigate does not, however, grant defendants a license to invoke the subpoena power of the Court in a manner that undermines Rule 17. Cartagena surmises

---

[7] See also United States v. Ventola, No. 15-10356, 2017 U.S. Dist. LEXIS 87160 *5 (D. Mass. Jun. 7, 2017) (quashing subpoenas that did "not seek specific documents or even a specific, discrete set of documents"); United States v. Leonard, 817 F. Supp. 286, 295 (E.D.N.Y. 1992) (quashing defendant' subpoena duces tecum where defendant sought, in part, "virtually every DEA document relating to [defendant]" who "has had dealings with the DEA for over fifteen years."); United States v. Noriega, 764 F. Supp. 1480, 1492-94 (S.D. Fla. 1991) (holding that government's subpoena of defendant's prison-recorded conversations prior to the time they are to be offered in evidence was improper because the prosecution "simply hoped to find something of possible value which might bolster its case against [defendant]."); United States v. Hang, 75 F.3d 1275, 1283 (8th Cir. 1996) (finding that defendant's subpoenas that "were directed toward a hospital and various Government agencies [and] were primarily designed to uncover documents relating to the mental health of certain prosecution witnesses" were "based on nothing but sheer speculation" and lacked specificity).

that the subpoenaed records have "the **_potential_** to bolster the complaint's allegations, it has the potential to undermine them, provide possible material impeachment, or give rise to the alternative theories of the evidence." <u>Id.</u> at p. 5 (emphasis added). Cartagena's inability to articulate with precision what records he seeks, or the purpose for which he seeks them, confirms that he cannot satisfy <u>Nixon</u>'s specificity prong. <u>See</u> <u>Noriega</u>, 764 F. Supp. at 1493 ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").[8] As the Supreme Court held in <u>Nixon</u>, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance for trial." 481 U.S. at 701; <u>see also</u> <u>United States v. Hughes</u>, 895 F.2d 1135, 1146 (6th Cir. 1990) (quashing Rule 17(c) subpoena compelling production of documents sought for impeachment purposes). Moreover, Cartagena cites no authority in support of the proposition that searching for "alternative theories" is a proper basis to compel production of documents.

---

[8] <u>See also</u> <u>United States v. Caro</u>, 597 F.3d 608 (4th Cir. 2010) (holding that the district court properly quashed the subpoena for lack of specificity because "Caro can only speculate as to what the requested information would have shown"); <u>United States v. Hardy</u>, 224 F.3d 752, 755 (8th Cir. 2000) (holding that defendant failed to satisfy the specificity requirement because he "has stated why he wants to listen to the transmissions, but he cannot set forth what the subpoenaed material contain").

Consequently, Cartagena's desire to procure impeachment material, or evidence favorable to his case or to sentencing, cannot sustain the subpoena issued to López at this time.

In short, the Court cannot authorize a subpoena *duces tecum* that serves to unearth "potential" evidence because doing so would convert Rule 17 into the discovery tool it is not. <u>See</u> <u>Noriega</u>, 764 F. Supp. at 1492 ("Rule 17(c) which covers subpoenas for documents and other materials, is not a discovery device."); <u>United States v. Libby</u>, 432 F. Supp. 2d 26, 30 (D.D.C. 2006) ("Courts must be careful that rule 17(c) is not turned into a broad discovery device") (quoting <u>United States v. Cuthbertson</u>, 630 F.2d 139, 146 (3d Cir. 1980)). Defense counsel's commitment to providing Cartagena zealous representation by investigating the allegations set forth in the indictment is commendable. Rule 17, however, is an improper means to this end.

**D.    Cartagena Failed to Demonstrate that the Subpoenaed Evidence is Admissible**

Cartagena must make a sufficient showing that the material identified in the Rule 17 subpoena is admissible. <u>United States v. Rand</u>, 835 F.3d 451, 463 (4th Cir. 2016) ("The right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely

'investigatory'") (internal citation omitted).  He fails in this respect.  Determining whether the "reports, photos, or notes" pertaining to the August 20, 2017 shooting at the Total Gas Station are admissible calls for this Court to ground evidentiary rulings on conjecture and speculation.

Cartagena makes no argument regarding the purported admissibility of the testimony or documents requested from López. Investigative notes produced by law enforcement "are out-of-court statements" that would generally constitute inadmissible hearsay if offered to prove the truth of the matter asserted.  <u>Guzmán-de los Santos</u>, 944 F. Supp. 2d at 128.  Because Cartagena has failed to make a showing that the requested documents are admissible, there is no reason for the Court to order their compelled production.

Additionally, the broad request that López provide all "reports" may potentially encompass witness statements.[9]  Federal Rule of Criminal Procedure 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under

---

[9] A statement is:  (1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement. Fed. R. Crim. P. 26.2(f).

this rule," referring litigants to Federal Rule of Criminal Procedure 26.2. Fed. R. Crim. P. 17(h). The request from Cartagena assumes that López or any other individual who authored or adopted the subpoenaed documents will not testify as government witnesses. Cartagena is not entitled to witness statements until the witness testifies in court pursuant to 18 U.S.C. section 3500, the Jencks Act. See 18 U.S.C. § 3500; United States v. Ortiz-García, 553 F. Supp. 2d 119, 120 (D.P.R. 2008) (Besosa, J.) (denying defendant's request to obtain FBI reports because "Rule 16(2) does not authorize the 'discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500").[10] Accordingly, Cartagena's failure to demonstrate that the requested evidence is admissible and subject to disclosure pursuant to Rule 17(c) provides yet another reason why quashal of the subpoena is warranted.

---

[10] Cartagena's demand for "reports, photos, or notes" regarding the August 20, 201 shooting implicates Federal Rule of Criminal Procedure 16 ("Rule 16"). Fed. R. Crim. P. 16. Rule 16 sets forth the United States' discovery obligations, excluding explicitly from disclosure "reports, memoranda, or other internal government documents made by [. . .] government agent[s] in connection with investigating or prosecution the case." Fed. R. Crim. P. 16(G)(2). Whether the subpoena issued to López compels production of material precluded by Rule 16 is tangential to the Rule 17 analysis. The Court notes, however, that "if the item is not discoverable under Rule 16, a party cannot make it discoverable simply by subpoenaing it under Rule 17." United States v. Barnes, No. 04-186, 2008 U.S. Dist. LEXIS 125298 *5 (S.D.N.Y. Apr. 2, 2008); Arditti, 955 F.2d 331, 344 ("The Rule 16 door closes, so a criminal defendant attempts to pry open the Rule 17(c) portal") (Goldberg, J., concurring).

Tellingly, Cartagena addresses only the relevancy prong of the Nixon analysis, omitting from his written submission any argument pertaining to the admissibility and specificity prongs. (Docket No. 52 at p. 11; citing 418 U.S. 683.) Cartagena maintains that the subpoenaed documents are relevant because they "pertain to allegations of a police involved shooting." (Docket No. 52 at p. 11.) Relevancy alone, however, cannot substantiate a finding that the subpoena complies with the Nixon requirements.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the United States' motion to quash the subpoena issued to Héctor López, Commissioner for the Special Investigation Bureau of the Puerto Rico Department of Justice. (Docket No. 50.) The subpoena is **QUASHED**. Id. The Court, nonetheless, reminds the United States that the fairness and credibility of our criminal justice system largely depends on prosecutors diligently complying with their discovery obligations. That a defendant may not be entitled to subpoena certain records does not necessarily mean that the United States has no obligation to produce those same records if, for example, they contain material falling with the scope of Brady v. Maryland, 373 U.S. 83 (1983); Kyles v. Whitley, 514 U.S. 419 (1995), or any other rule of disclosure.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 19, 2018.

<div style="margin-left:50%">

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

</div>